UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | Civil Action No. 2:23-CV-00214 |
| v. | § | |
| | § | Hon. Nelva Gonzales Ramos |
| ENERGY TRANSFER (R&M), LLC; et al. | § | |

**THIRD-PARTY PLAINTIFFS' CONSOLIDATED
SUR-REPLY IN OPPOSITION TO THIRD-PARTY DEFENDANTS'
REPLIES IN SUPPORT OF THEIR MOTIONS TO DISMISS**

Defendants/Third-Party Plaintiffs Energy Transfer (R&M), LLC f/k/a Sunoco, Inc. (R&M) ("Sunoco"), El Paso, LLC, and El Paso Merchant Energy-Petroleum Company (with El Paso, LLC, "El Paso") (collectively, "Third-Party Plaintiffs") file this consolidated sur-reply in opposition to the following three replies (together, the "Replies") in support of motions to dismiss:

1. Joint (Third-Party Defendants ConocoPhillips Company and Texaco Inc.) Reply in Support of Motions to Dismiss Energy Transfer (R&M), LLC's Third-Party Complaint (ECF No. 194) (the "ConocoPhillips Reply");

2. Buckeye Texas Processing's Reply to Third-Party Plaintiffs' Response to Third-Party Complaints (ECF No. 195) (the "Buckeye Reply"); and

3. Third-Party Defendant Hess Corporation's and Anadarko E&P Onshore LLC's Reply in Support of Their Motions to Dismiss Third-Party Complaints (ECF No. 196) (the "Hess Reply").

**TABLE OF CONTENTS**

I. ARGUMENT ................................................................................................. 1

    A. Third-Party Defendants' § 113 Arguments Ignore CERCLA's Text And Controlling Precedent. ........................................................... 1

    B. Third-Party Defendants' New § 107 Arguments Are Equally Baseless. ........ 5

    C. Sunoco's Third-Party Complaint Satisfies Pleading Requirements .............. 7

II. CONCLUSION ............................................................................................ 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Am. Cyanamid Co. v. Capuano*,
   381 F.3d 6 (1st Cir. 2004) ................................................................................................. 4

*Andres v. Town of Wheatfield*,
   No. 1:17-cv-00377, 2019 WL 2491949 (W.D.N.Y. June 14, 2019) ............................... 9, 10

*Asarco LLC v. Celanese Chem. Co.*,
   792 F.3d 1203 (9th Cir. 2015) ........................................................................................... 4

*Brooklyn Union Gas Co. v. Exxon Mobil Corp.*,
   554 F. Supp. 3d 448 (E.D.N.Y. 2021) ............................................................................ 9, 10

*Burlington Northern and Santa Fe Railway Co. v United States*,
   556 U.S. 599 (2009) ........................................................................................................... 8

*Cal. Dep't of Toxic Subst. Control v. J & S Chrome Plating Co.*,
   2015 WL 12645742 (C.D. Cal. July 30, 2015) ............................................................... 6, 7

*Chaplin v. Exxon Co.*,
   CIV. A. H-84-2524, 1986 WL 13130 at *2 (S.D. Tex. June 10, 1986) .............................. 9

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
   543 U.S. 157 (2007) ................................................................................................... 2, 3, 5

*Del-Ray Battery Co. v. Douglas Battery Co.*,
   635 F.3d 725 (5th Cir. 2011) ............................................................................................. 8

*Exxon Mobil Corp. v. United States*,
   335 F. Supp. 3d 889 (S.D. Tex. 2018) ............................................................................ 6, 7

*General Cable Industries, Inc. v. Zurn Pex, Inc.*
   561 F. Supp. 2d 653 (E.D. Tex. 2006) ............................................................................... 9

*Geraghty & Miller, Inc. v. Conoco, Inc.*,
   234 F.3d 917 (5th Cir. 2000), *abrogated on other grounds as recognized by*
   *Vine Street LLC v. Borg Warner Corp.*, 776 F.3d 312 (5th Cir. 2015) ........................... 5, 7

*Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*,
   758 F.3d 757 (6th Cir. 2014) ............................................................................................. 6

*IberiaBank Corp. v. Ill. Union Ins. Co.*,
   953 F.3d 339 (5th Cir. 2020) ............................................................................................. 7

**Page(s)**

**Cases, cont'd.**

*Residents Against Flooding v. Reinvestment Zone No. Seventeen*,
    260 F. Supp. 3d 738 (S.D. Tex. 2017) ..........................................................................6

*Territory of Guam v. United States*,
    593 U.S. 310 (2021) ......................................................................................................3

*United States v. Atl. Rsch. Corp.*,
    551 U.S. 128 (2007) ..................................................................................................4, 6

*United States v. W.R. Grace & Co.*,
    429 F.3d 1224 (9th Cir. 2005) .....................................................................................7

*Voggenthaler v. Maryland Square LLC*,
    No. 2:08-CV-1618-RCJ-GWF, 2010 WL 2998253 (D. Nev. July 22, 2010) ............10

**Statutes**

42 U.S.C. § 9607 ..........................................................................................1, 3, 4, 5, 10

42 U.S.C. § 9613 .......................................................................................1, 2, 3, 4, 5, 6, 7

# THIRD-PARTY PLAINTIFFS' CONSOLIDATED
# SUR-REPLY IN OPPOSITION TO THIRD-PARTY DEFENDANTS'
# <u>MOTIONS TO DISMISS</u>

Third-Party Defendants' protests about "hyper-technical parsing" of CERCLA's text betray their dissatisfaction with the text's plain meaning. Third-Party Defendants' Replies raise new arguments in an effort to evade El Paso's and Sunoco's claims, but under CERCLA's plain language and binding precedent interpreting that language, Third-Party Defendants' effort must fail. El Paso and Sunoco have properly—and timely—pleaded entitlement to cost recovery and contribution relief under CERCLA §§ 107 and 113.[1]

**I.     ARGUMENT**

    **A.     Third-Party Defendants' § 113 Arguments Ignore CERCLA's Text And Controlling Precedent.**

El Paso and Sunoco sought contribution from Third-Party Defendants under CERCLA § 113(f)(1) after the United States sued under CERCLA § 107(a). Section 113(f)(1) expressly authorizes such relief: "Any person may seek contribution from any other person who is liable or potentially liable under [§ 107(a)] of this title, during or following any civil action under [§ 106 or § 107(a)] of this title." CERCLA further establishes a deadline for seeking such relief: "No action for contribution for any response costs or damages may be commenced more than 3 years after—(A) the date of judgment in any action under this chapter for the recovery of such costs or damages . . . ." CERCLA

---

[1] CERCLA §§ 107 and 113 are codified at 42 U.S.C. § 9607 and 42 U.S.C. § 9613, respectively. In keeping with convention, El Paso and Sunoco refer and cite throughout to CERCLA § 107 and § 113.

§ 113(g)(3). Obviously, there has been no judgment entered in this case, and the statute of limitations has therefore not run for purposes of El Paso's and Sunoco's § 113(f)(1) claims, which are responsive to potential adjudicated liability on the United States' asserted claims.

Third-Party Defendants seek to avoid this straightforward, text-anchored logic based on little more than their own say-so.[2] Citing nothing in support, Buckeye's Reply asserts that "the mechanisms of § 113(f) and (g) illustrate that once a right to contribution is triggered by either provision [i.e., § 113(f)(1) or § 113(f)(3)(B)], the limitations period for seeking contribution begins to run." ECF No. 195 at 4. Buckeye appears to base this assertion on language it selectively quotes from § 113's statute-of-limitations provisions. According to Buckeye, "[t]he notion that § 113(f) creates two different contribution claims for two different 'sets' of costs is foreclosed by § 113(g)(3)(B), which states that contribution actions for '**any** response costs or damages' must be commenced within 3 years of the triggering event." *Id.*

Buckeye's position is easily dispatched because there are two statutes of limitations for § 113(f) actions. As the Supreme Court has observed, § 113(f) "provides two express avenues for contribution[,]" namely, § 113(f)(1) and § 113(f)(3)(B), for which there are "two corresponding 3-year limitations periods for contribution actions, one beginning at the date of judgment, § 113(g)(3)(A), and one beginning at the date of settlement, § 113(g)(3)(B)." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 167 (2007). By insisting that limitations would begin to run for § 113(f)(1) claims, even in the absence of

---

[2] Each of the Replies adopts and incorporates this argument from Buckeye's Reply. ECF No. 194 at 7 (ConocoPhillips Reply); ECF No. 196 at 3 (Hess Reply).

2

a predicate action under § 106 or § 107(a), because of the (hypothetical) availability of § 113(f)(3)(B) claims,[3] Buckeye's argument impermissibly renders this statutory distinction meaningless. *See id.* at 166 ("Aviall's reading would render part of the statute entirely superfluous, something we are loath to do.").

Moreover, the specific language of §§ 113(g)(3)(A) and (B) further contradicts Buckeye's misapplication of § 113's statute-of-limitations provisions. The introductory language of § 113(g)(3)—"[n]o action for contribution for any response costs or damages may be commenced more than 3 years after"—is immediately cabined in the following subsections to those response costs or damages contained in a judgment or qualifying settlement. Thus, under § 113(g)(3)(A), a § 113(f)(1) action for any response costs or damages is untimely if commenced more than three years after "the date of judgment in any action under this chapter for the recovery of *such* costs or damages[.]" And under § 113(g)(3)(B), a § 113(f)(3)(B) action for any response costs or damages is untimely if commenced more than three years after the date of a qualifying settlement "with respect to *such* costs or damages." Read in totality—a requirement Buckeye acknowledges but then ignores, *see* ECF No. 195 at 4 (citing *Territory of Guam v. United States*, 593 U.S. 310,

---

[3] While it is unnecessary for purposes of rejecting Third-Party Defendants' argument regarding § 113(f)(1), El Paso and Sunoco note that a § 113(f)(3)(B) action was unavailable to them because the AOC expressly did not resolve the parties' liability. *See* ECF No. 122-1 (AOC) ¶ 4 ("The EPA and Respondents recognize that . . . the actions undertaken by Respondents in accordance with this Order do not constitute an admission of any liability."). A settlement that resolves liability is the fundamental prerequisite to a § 113(f)(3)(B) contribution action. *See* CERCLA § 113(f)(3)(B) (authorizing contribution actions by "[a] person who has *resolved its liability* to the United States" (emphasis added)).

3

315–17 (2021))—§ 113(g)(3) is clear that the statute of limitations for § 113(f) actions begins to run only as to those costs for which liability is established, whether by judgment or qualifying settlement. *See, e.g.*, *Asarco LLC v. Celanese Chem. Co.*, 792 F.3d 1203, 1215 (9th Cir. 2015) ("[T]here is no limit in the statute to prevent a party in an early settlement from seeking contribution related to a later settlement, as long as those settlements cover separate obligations."); *Am. Cyanamid Co. v. Capuano*, 381 F.3d 6, 13–15 (1st Cir. 2004) ("[A] PRP has three years to seek contribution for costs contained within a judgment. The statute of limitations, however, is not triggered for costs *not* contained within the judgment.").[4]

This conclusion is buttressed by the nature of contribution itself. Contribution—a concept CERCLA adopted from tort—is the "right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault." *United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 138 (2007) (quoting Black's Law Dict. 353 (8th ed. 2004)). Thus, "a [potentially responsible party's] right to contribution under § 113(f)(1) is contingent upon an inequitable distribution of *common liability* among liable parties." *Id.* at 139. Such "common liability" is thus a necessary predicate of any contribution action.[5] And this basic

---

[4] Buckeye suggests that "El Paso and Sunoco's argument, taken to its logical conclusion, means parties could unilaterally break up costs into different 'sets' to trigger new and successive limitations periods." ECF No. 195 at 4. Buckeye does not explain how a party would "unilaterally" go about getting itself sued for purposes of § 113(f)(1) or would "unilaterally" manage to settle § 107(a) liability for purposes of § 113(f)(3)(B).

[5] Buckeye's Reply includes a lengthy footnote citing cases involving declaratory judgments that "h[eld] that declaratory relief for contribution toward future response costs is an appropriate and available remedy under CERCLA." ECF No. 195 at 5 & n.4. But none of

4

principle undergirds CERCLA's § 113 limitations provisions, which are triggered by the *establishment* of liability for response costs or damages by judgment or qualifying settlement. Such liability has not been established here, and limitations has not run.

### B. Third-Party Defendants' New § 107 Arguments Are Equally Baseless.

Third-Party Defendants continue to argue that El Paso and Sunoco cannot maintain both § 107 and § 113 claims, notwithstanding the fact that these claims are directed to the recovery of different categories of costs. Buckeye's new spin on this argument is its assertion that "[t]he text of § 113(f)(3)(B) does not allow parties to simultaneously seek recovery under § 107(a) and § 113(f)—regardless of whether costs fell outside the scope of the triggering settlement." ECF No. 195 at 6. New, too, is Buckeye's argument that the § 107 statute of limitations for recovery of costs associated with remedial actions may commence before the completion of removal action and selection of the remedial action by the EPA. *Id.* at 9–10.[6] Neither argument is sound.

---

those cases contradicts El Paso and Sunoco, nor are their holdings relevant to the instant dispute. As those cases hold, declaratory relief is available in contribution actions; but the availability of a type of remedy in a particular kind of action does not bear upon the availability of the action itself. To hold otherwise here—*i.e.*, that a party could seek a contribution declaration in the absence of a predicate suit or settlement—would contravene the central holding of *Cooper Industries* that § 113(f)(1) is *only* available "during or following" a suit under § 106 or §107(a). 543 U.S. at 166.

[6] Relatedly, Buckeye argues that the classification of an activity as "removal" or "remedial" is a question of law. ECF No. 195 at 9. This is not disputed. However, Buckeye does not address the point El Paso and Sunoco actually raised, which is that determining "if and when the removal actions were completed is a material issue of fact." ECF. No. 187 at 20. Nor does Buckeye address the Fifth Circuit's observation that, although classification of "removal" and "remedial" is a legal question, the analysis is nevertheless "highly fact-specific." *Geraghty & Miller, Inc. v. Conoco, Inc.*, 234 F.3d 917, 926 (5th Cir. 2000), *abrogated on other grounds as recognized by Vine Street LLC v. Borg Warner Corp.*, 776 F.3d 312, 317 (5th Cir. 2015). Such factual questions are not appropriate for disposition at

5

First, Buckeye does not identify any CERCLA provision that prohibits simultaneously seeking recovery under § 107(a) and § 113(f), nor can it. Indeed, in light of the nature of contribution—a doctrine based on inequitable distribution of common liability—El Paso and Sunoco *could not* seek to recover voluntarily incurred costs (*i.e.*, costs for which no liability had been established) by means of a § 113 contribution suit. *See Atl. Rsch. Corp.*, 551 U.S. at 139. *Hobart*, on which Buckeye relies, does not instruct otherwise because *Hobart* determined that the administrative settlement agreement and order on consent at the heart of the dispute was a § 113(f)(3)(B) "liability-resolving" settlement that covered the costs the claimant sought to recover. *Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 758 F.3d 757, 768 (6th Cir. 2014). *Hobart*'s context does not apply here because the AOC in this case is not a qualifying settlement under § 113(f)(3)(B). *See* ECF No. 187 at 20–22.

Second, Buckeye contends, as before, that installation of the sediment cap in December 2017 constituted a remedial action that triggered the six-year statute of limitations for § 107 recovery of remedial costs under § 113(g)(2)(B). ECF No. 195 at 9–10. Buckeye now argues that "[n]othing in CERCLA's text suggests that 'actions consistent with a permanent remedy' cannot begin until a 'removal action' is completed." *Id.* at 10.

---

this procedural stage. *Residents Against Flooding v. Reinvestment Zone No. Seventeen*, 260 F. Supp. 3d 738, 756 (S.D. Tex. 2017). And, at any rate, the overlapping definitions of "removal" and "remedial" should be construed in favor of recovery. *See Exxon Mobil Corp. v. United States*, 335 F. Supp. 3d 889, 909 (S.D. Tex. 2018) (citing *Cal. Dep't of Toxic Subst. Control v. J & S Chrome Plating Co.*, 2015 WL 12645742, at *3 (C.D. Cal. July 30, 2015)).

Even if this were true,[7] it cuts both ways: nothing prevents a "removal action" from being consistent with a permanent remedy, either.[8]

Importantly, the Southern District of Texas has recently determined as a matter of law (after a lengthy, fact-intensive factor analysis) that "capping contaminated soils or sludges where needed to reduce the migration of contaminants" fit within "CERCLA's definition of a removal action[.]" *Exxon Mobil Corp. v. United States*, 335 F. Supp. 3d 889, 918 (S.D. Tex. 2018) (Rosenthal, J.). Buckeye's Reply would have this Court short-circuit any similar analysis here and instead decide *on the pleadings* that El Paso's and Sunoco's capping activities were necessarily remedial. But Buckeye has not demonstrated *on the pleadings* that (a) placing the sediment cap was a remedial action and (b) the sediment cap was not a removal action covered by CERCLA's limitations savings clause in § 113(g)(2)(A). This argument, too, must be rejected.

### C. Sunoco's Third-Party Complaint Satisfies Pleading Requirements

*Twombly* and *Iqbal* did not change the Fifth Circuit's view of 12(b)(6) motions: "This court construes facts in the light most favorable to the nonmoving party, 'as a motion to dismiss under 12(b)(6) **is viewed with disfavor and is rarely granted**.'" *IberiaBank*

---

[7] *But see J & S Chrome Plating Co.*, 2015 WL 12645742, at *3 ("[A]n action cannot be considered remedial until a permanent remedy has been selected, usually in the form of a remedial action plan.").

[8] *See United States v. W.R. Grace & Co.*, 429 F.3d 1224, 1244 (9th Cir. 2005) ("As a practical matter, removal actions are often permanent solutions such as can be the case in a typical soil or drum removal." (internal quotations omitted)); *see also Geraghty & Miller*, 234 F.3d at 927 ("Even if the replacements for these wells are integral to the long-term remediation of the site, that does not mean that their initial placement cannot be categorized as removal.").

7

*Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020). Moreover, decisions after *Twombly* and *Iqbal* make clear that CERCLA does not impose any heightened pleadings requirements. *Del-Ray Battery Co. v. Douglas Battery Co.*, 635 F.3d 725, 729 (5th Cir. 2011).

The analysis in the Replies of *Burlington Northern and Santa Fe Railway Co. v United States*, 556 U.S. 599, 611 (2009) is wrong. ECF No. 194 at p. 3. First, pleading requirements were not discussed in *BNSF*, which was an appeal of a judgment after a bench trial. Second, *BNSF* held that the sale of useful products containing hazardous substances that are spilled during product delivery to consumers did *not* make the seller an arranger. *Id.* at 610. *BNSF* identified two factors. First, the purpose of the sale involved a useful product; waste disposal was a mere peripheral occurrence. Second, the purported arranger did not intentionally dispose of the hazardous substance because it took steps to reduce the discharge. *Id.* at 612–13.

Sunoco's allegations are that certain third-party defendants entered into transactions "for the sole purpose of discarding a used and no longer useful hazardous substance." *Id.* at 610. Here, the hazardous substances came from wastes (e.g., drilling mud, tank bottoms, and refinery wastes), *not* from useful products. ECF No. 67 ¶¶ 27–28. Neither sale of a useful product nor failure to try to reduce the discharge is alleged or present in this case.

Sunoco alleged facts that easily allow this Court to infer compliance with CERCLA. *See* ECF No. 67.

For example, Sunoco alleges that on August 31, 2020, EPA issued a Record of Decision ("ROD") for the Site. *Id.* at ¶ 26. The ROD shows that 1) the Site is listed on the

8

CERCLA National Priorities List ("NPL"), 2) the Brine Cooperating Parties, which included Sunoco, installed a sediment cap, which EPA specifically incorporated into the remedial action, 3) the Remedial Investigation (RI) and Feasibility Study (FS) were performed pursuant to an EPA Administrative Order, 5) EPA approved the RI report, 5) EPA conducted community participation to comply with the NCP, and 6) EPA made numerous references to the FS in the ROD. *See* ECF No. 122-2 (ROD) at 16–17.

In contrast, the property at issue in *General Cable Industries, Inc. v. Zurn Pex, Inc.* 561 F. Supp. 2d 653 (E.D. Tex. 2006) was not on the NPL; it had no EPA involvement. The plaintiff in *General Cable* did not identify a factual basis for consistency with the NCP. *Id*. at 657. In this case, the ROD and other references in the pleadings (both of Sunoco and the United States) specifically address NCP compliance. *See* ECF No. 122-2 at 16–17 and ECF No. 34 at 7–9.

*Chaplin v. Exxon Co.* involved allegations that "medical monitoring costs" were response costs under CERCLA. No. CIV. A. H-84-2524, 1986 WL 13130 at *2 (S.D. Tex. June 10, 1986). In *Chaplin,* the plaintiffs' lawyer acknowledged "that no cleanup costs other than medical monitoring had been incurred by the plaintiffs." *Id.* at *3. After concluding that medical monitoring costs alone were not recoverable response costs under CERCLA, the Court granted the motions to dismiss. *Id.*

*Andres v. Town of Wheatfield*, No. 1:17-cv-00377, 2019 WL 2491949 (W.D.N.Y. June 14, 2019), does not apply for the same reasons that *Brooklyn Union Gas Co. v. Exxon Mobil Corp.*, 554 F. Supp. 3d 448, 464 (E.D.N.Y. 2021), found *Andres* to be "inapposite." *Brooklyn Union* noted that the *Andres* court dismissed the § 107 claims because the

9

plaintiffs did not specify *which* plaintiffs incurred the costs of sampling and investigation, even though the plaintiffs were in possession of this information and could therefore specify which remedial costs were incurred by whom. 554 F. Supp. 3d at 464–65. Unlike in *Andres*, *Brooklyn Union* had a single plaintiff. *Id*. at 465. Similarly, Sunoco's § 107(a) claims are only for what Sunoco incurred.

Lastly, reliance on *Voggenthaler v. Maryland Square LLC*, No. 2:08-CV-1618-RCJ-GWF, 2010 WL 2998253, at *6 (D. Nev. July 22, 2010), is also misplaced. ECF 196 at 5. In *Voggenthaler*, the third-party complaint only alleged that the defendants "may" have used and/or spilled solvents and other chemicals at another location. 2010 WL 2998253 at *6. In contrast, Sunoco's pleading identifies Texaco and predecessors of Hess, Anadarko, and ConocoPhillips as generators of hazardous substances that were disposed of at the Site. ECF No. 67 ¶¶ 27–28.

**II.     CONCLUSION**

For the foregoing reasons, the Motions to Dismiss filed by Third-Party Defendants should be denied. In the alternative, if the Court finds any Third-Party Complaint filed by Sunoco or El Paso to be deficient in any way, Sunoco and El Paso request the Court grant them leave to amend their Third-Party Complaints

Dated: March 12, 2025							Respectfully submitted,

/s/ James E. Smith
James E. Smith
Attorney-in-Charge
Texas Bar No. 18617800
S.D. TX ID 0799
1401 McKinney, Suite 1700
Houston, Texas 77010
jsmith@craincaton.com
Ph:	(713) 658-2323
Fax:	(713) 658-1921

Of Counsel
Crain, Caton & James P.C.
1401 McKinney, Suite 1700
Houston, Texas 77010
Ph:	(713) 658-2323
Fax:	(713) 658-1921
Kelly D. Brown
S.D. TX ID 13782
Texas Bar No. 03149830
kbrown@craincaton.com
Caroline C. Pace
S.D. TX ID 872057
Texas Bar No. 24060372
cpace@craincaton.com

**Attorneys for Defendant/Third-Party Plaintiff Energy Transfer (R&M), LLC ("Sunoco")**

BRACEWELL LLP

/s/ David A. Super
David A. Super (*admitted pro hac vice*)
D.C. Bar No. 429359
Attorney-in-Charge
2001 M Street NW, Suite 900
Washington DC 20036
Ph:	(202) 828-5836
Fax:	(800) 404-3970
david.super@bracewell.com

11

    -and-

    W. Stephen Benesh
    State Bar No. 00000099
    S.D. Bar No. 9606
    Timothy A. Wilkins
    State Bar No. 00788668
    S.D. Bar No. 3904776
    111 Congress Avenue, Suite 2300
    Austin, Texas 78701-4061
    Ph:   (512) 472-7800
    Fax:  (800) 404-3970
    timothy.wilkins@bracewell.com

    -and-

    Joshua T. Windsor
    State Bar No. 24110541
    S.D. Bar No. 3838386
    711 Louisiana Street, Suite 2300
    Houston, Texas 77002-2770
    Ph:   (713) 221-1228
    Fax:  (800) 404-3970
    joshua.windsor@bracewell.com

    **Counsel for Defendants/Counter-Plaintiffs/Third-Party Plaintiffs El Paso, LLC and El Paso Merchant Energy-Petroleum Company**

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served upon all counsel of record on this 12th day of March, 2025 via the Court's CM-ECF system.

                                        */s/ David A. Super*
                                      David A. Super (*admitted pro hac vice*)